IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SARA WYLIE, as Personal Representative of                                                          PLAINTIFFS
the Probate Estate of Phillip Wylie, Deceased, and
as Trustee of the Wylie Revocable Living Trust;
and MICHAEL WYLIE, as Personal Representative
of the Probate Estate of Phillip Wylie, Deceased

v.                                          No. 4:18CV00017 JLH

PLATINUM EQUITY, LLC; RYERSON
HOLDING CORPORATION, formerly known
as Rhombus Holding Corporation;
and RYERSON, INC.                                                                                  DEFENDANTS

**OPINION AND ORDER**

Sara and Michael Wylie, wife and son of the now-deceased Phillip Wylie, are the personal representatives of Phillip's estate. The Wylies sued Platinum Equity, LLC, Ryerson Holding Corporation, and Ryerson, Inc., alleging five counts: (1) a claim under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/1 *et seq.*; (2) breach of fiduciary duty; (3) promissory estoppel; (4) quantum meruit; and (5) unjust enrichment. The defendants have moved to dismiss all counts.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual

allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

The facts that follow are alleged in the complaint. The Court accepts them as true for the purpose of ruling on the motions to dismiss. Phillip Wylie lived in Arkansas and worked for Ryerson, Inc., a metal processing and distribution company based in Chicago, Illinois, for decades before he was terminated in January 2014. Phillip was promoted to president of Ryerson's southwest region in May 2000. He signed an employment agreement with Ryerson that contained an Illinois choice-of-law provision. Document #1-1. Phillip signed another employment agreement with Ryerson in December 2004, which again contained an Illinois choice-of-law provision. Document #1-2. From 2009 through 2013, Ryerson required Phillip to travel to its headquarters in Chicago at least a few times every month. Phillip performed a substantial amount of work in Illinois during this period.

According to the employment agreement between Phillip and Ryerson, had Phillip been terminated without cause, he would have been entitled to benefits for a period that commenced on the date of his termination. *Id.* During this "Benefit Period," Phillip would have received "bi-weekly payments based on his . . . Annual Base Salary, a Bonus . . . , and certain other benefits in effect as of the Termination Date." *Id.* The agreement further stated that "Annual Base Salary payments to the Executive during the Benefit Period shall not preclude the Executive's eligibility for cash severance payments under the Corporation Severance Plan." *Id.*

2

Platinum acquired Ryerson in October 2007. Ryerson's business experienced a downturn in 2008. In 2009 Ryerson created a "Participation Plan" for key employees, who were to benefit financially from improvement in the company's value upon the company's initial public offering of its stock. Ryerson offered Phillip participation in the plan, which provided "incentive compensation to key employees" and was "intended to benefit the Company by creating incentives for participating key employees." Document #1-3. In order to participate, Phillip was required to accept a reduction in pay and benefits. The plan created a compensation committee that had discretion to award "Performance Units" to the participating "key employees." *Id.* Once granted, the Performance Units would be credited to an account established and maintained for the participant. The grant of Performance Units and their "Grant Value" would be set out in a grant agreement. *Id.* On February 16, 2009, Ryerson executed a grant agreement and granted Phillip 6,562,500 Performance Units with a Grant Value of $1.00 per unit. Document #1-4. Under the plan, the Performance Units had no economic value until a "Qualifying Event," such as the sale of Ryerson's common stock, occurred. Document #1-3.

The Participation Plan stated that a participant would forfeit all granted Performance Units if "the Participant terminates or is terminated from his employment with the Company or one of its subsidiaries with or without cause." Document #1-3. The Participation Plan also contained a provision stating that "[t]he [Compensation] Committee may at any time terminate the Plan and unless sooner terminated by the Committee, the Plan shall expire on February 16, 2014." *Id.* Under the plan, "[a]ll Performance Units shall terminate upon termination or expiration of the Plan." *Id.*

In July 2013, Phillip was diagnosed with brain cancer. The president of Ryerson assured Phillip that his position with Ryerson and his participation in the plan was secure and would be

waiting for him after his recovery from chemotherapy treatments. On July 30, 2013, a Ryerson human resources officer told Phillip that the Participation Plan, which was set to expire in February 2014, would be amended and rewritten to address the new date and that the amended plan would include Phillip. Phillip intended to continue working at Ryerson at least until a Qualifying Event took place, giving his Performance Units monetary value.

In September 2013, Phillip was medically cleared to return to work and notified Ryerson's president of his intent to do so. The president directed a regional manager to inform Phillip that Ryerson was eliminating its southwest region, of which Phillip had been president, and that Phillip's position likewise was being eliminated. Phillip was again assured that he would remain a participant in the Participation Plan, even though under the plan all Performance Units were forfeited when an employee was terminated. In December 2013, Ryerson asked Phillip to sign a General Separation and Release Agreement, which set Phillip's final day for January 8, 2014. Document #1-5. On January 5, 2014, Phillip learned for the first time from Ryerson's president that he would not be a participant in the plan after termination of his employment.

Phillip wrote the president a letter on January 13, 2014, noting the assurances he had been given that the plan would be rewritten and detailing the events leading up to his termination. He wrote that he was "not inclined to sign a release and walk away from the potential benefit of the Participation Plan." Document #1-6. Ryerson's president responded by letter on January 23 and addressed the release, saying, "It is certainly your choice not to sign the release that was sent to you with your notice of separation. Please note, however, that by not signing the release, you are forfeiting any payments and other benefits that you would otherwise receive under Ryerson's severance policy." Document #1-7. He went on to tell Phillip that "your participation in the

4

Ryerson Participation Plan ended as of the effective date of your termination (this is true regardless of whether you sign the release)." *Id.*

The release conditioned payment of 40 weeks of regular pay, any benefits for which Phillip was eligible under his employment agreement, and $15,000 in lieu of outplacement assistance, on Phillip agreeing to release Ryerson "from any and all claims, suits, demands, actions or causes of action of any kind or nature whatsoever . . . pertaining to or arising out of Employee's employment by Employer or his/her separation from employment with Employer." Document #1-5 at 2-4. The release stated that "[t]he foregoing payments and benefits represent all of the compensation and benefits to which Employee is entitled by virtue of his/her employment and separation from employment with the Employer, plus additional compensation to which Employee is not otherwise entitled." *Id.* at 3. The release also specifically excluded from its terms any claims under state worker compensation laws. *Id.* Phillip executed the release on February 20, 2014.

On August 8, 2014, Ryerson's initial public offering closed, and its stock began trading on the New York Stock Exchange. The Participation Plan had expired by its own terms the preceding February. Moreover, Phillip was no longer employed by Ryerson. Consequently, he received no benefit from the Ryerson initial public offering. Phillip died on February 19, 2017.

The defendants offer many bases for dismissing the plaintiffs' claims. As a threshold issue, the parties disagree whether Arkansas or Illinois law governs. The defendants maintain that Arkansas law applies, while the plaintiffs say that Illinois law should apply. If Arkansas law applies, its three-year statute of limitations would bar Counts II-V of the complaint. If Illinois law applies, Illinois's five-year statute of limitations would govern and those four claims would not be time-barred.

5

This Court, as a federal court sitting in diversity, applies Arkansas's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *see also Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994) ("Federal district courts must apply the choice-of-law rules of the state in which they sit when jurisdiction is based on diversity of citizenship."). Different forum's laws may govern different claims. *See Stacks v. Bluejay Holdings, LLC*., No. 4:10CV00718, 2010 WL 3893990, at *3 (E.D. Ark. Sept. 29, 2010). In choosing between conflicting state laws, Arkansas courts first consider which state has the most significant relationship to the action and the parties, and then consider the five Leflar factors: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Ganey v. Kawasaki Motors Corp.*, U.S.A., 366 Ark. 238, 234 S.W.3d 838, 846-47 (2006).

Count I is a claim under Illinois law and Illinois law will govern that count. *See Bluejay Holdings*, 2010 WL 3893990 at *4. It also arises out of Wylie's employment. The employment contract specifies that Illinois law governs. *See Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) ("Arkansas courts will honor a choice of law provision, provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state." (internal quotation marks omitted)).

Illinois law also governs counts II-V. Phillip's employment with Ryerson gives rise to each of these counts. As counsel for the plaintiffs stated at oral argument, all of the claims seek a remedy for the lost value of Phillip's Performance Units. Phillip worked for an Illinois company, signed an employment agreement with an Illinois choice-of-law provision, and performed a substantial amount

of work in Illinois, at least as alleged in the complaint. The parties' expectations, the predictability of results, and Illinois's interest in its law deciding disputes between an Illinois employer and an employee covered by the Illinois Wage Payment and Collection Act, all weigh in favor of Illinois law applying. Arkansas's only connection to this case is that Phillip resided in Arkansas and performed some of his work in Arkansas. The defendants chose Illinois law to govern the employment contract and are in no position to complain if Illinois law governs all of the plaintiffs' claims relating to the employment relationship.

The defendants also argue that the plaintiffs lack standing to assert Phillip's claims under the Illinois survival act because that act "does not apply to Arkansas citizens asserting Arkansas state-law claims in an Arkansas court." Document #17 at 6 (footnote omitted). As explained above, the plaintiffs' common law claims are governed by Illinois law, not Arkansas law. Sara and Michael Wylie are joint personal representatives of Phillip's estate, and they have standing to assert actions that survive Phillip's death under the survival act. *See Wilmere v. Stibolt*, 152 Ill. App. 3d 642, 646, 504 N.E.2d 916, 918 (1987).

The defendants argue that the Illinois wage act claim fails because Phillip was not an employee covered by the act and because Phillip was not owed any "final compensation." The defendants represent in their briefs, and repeated the assertion at oral argument, that the Illinois wage act only covers Illinois residents. The Seventh Circuit, however, has specifically rejected this contention. In *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004), the court explained that the Illinois "Wage Act protects nonresidents of Illinois who perform work in that state for an in-state employer." The complaint alleges that "Wylie performed a substantial amount of his work for

Ryerson while physically present in the State of Illinois." Document #1 at ¶16. Phillip is covered by the act.

The act requires employers to "pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee." 820 Ill. Comp. Stat. Ann. 115/5. The act defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id.* 115/2.

The plaintiffs argue that the value of Phillip's Performance Units constituted an "earned bonus" under the act. They rely on *Schultze v. ABN AMRO, Inc.*, 2017 Ill. App (1st) 162140, ¶ 3, 83 N.E.3d 1053 (Ill. App. 2017). *Schultze* involved a bank executive who was terminated and disputed the calculation of his final annual bonus. The bonus was calculable and earned as of the time of termination, even though its amount was disputed. The court found "a long history of ABN's manifestation of mutual assent and 'unequivocal promise' to award Schultze a bonus according to ABN's standards in exchange for his quality performance." *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, ¶ 24, 83 N.E.3d 1053, 1060, appeal denied, 93 N.E.3d 1080 (Ill. 2017). Here, the parties agreed that Phillip's Performance Units would become valuable only upon the occurrence of certain events, none of which happened before his termination. The Act does not apply where "there is no final compensation to collect." *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 487, 903 N.E.2d 422, 430 (2009).

The court in *Schultze* also said that recovery under the act requires the employee "to demonstrate facts displaying mutual assent to terms." *Schultze*, 83 N.E.3d at 1059. The plaintiffs

have alleged nothing more than a promise to rewrite the Participation Plan and include Phillip in it. They have not alleged any facts that show mutual assent "to terms." *Id*. Without alleging some terms, the plaintiffs have failed to allege enough facts to state a plausible claim for the "earned bonus" that they seek to recover.

The defendants next argue that the release that Phillip signed bars his common law claims in counts II-V. The Illinois Wage Payment and Collection Act provides:

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed. The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void.

820 Ill. Comp. Stat. Ann. 115/9. All of the plaintiffs' claims, including those asserted under common law theories, are claims that the defendants owed wages to Phillip in addition to the amounts already paid. In other words, these common law theories are alternative ways of seeking full payment of wages that the defendants allegedly owed Phillip. The defendants could not, under the Illinois Wage Act, require that Phillip waive his right to full payment of his wage claims in return for partial payment of what he claimed was owed.

Additionally, Phillip's employment agreement entitled him to continued payments of his Annual Base Salary during a Benefit Period as well as continuation of certain other benefits. The agreement stated that "Annual Base Salary payments to the Executive during the Benefit Period shall not preclude the Executive's eligibility for cash severance payments under the Corporation Severance Plan." Document #1-2. Yet, the release required Phillip to release claims in order to receive "all of the compensation and benefits to which Employee is entitled by virtue of his/her

9

employment and separation from employment with the Employer, plus additional compensation to which Employee is not otherwise entitled." Document #1-5 at 3. And Ryerson's president told Phillip "that by not signing the release, you are forfeiting any payments and other benefits that you would otherwise receive under Ryerson's severance policy." Document #1-7. The release is void under Illinois law because Ryerson conditioned payments due under the Illinois wage act on a "release or restrictive endorsement."

Even in the absence of an effective release, the defendants maintain that the plaintiffs' claims for promissory estoppel, quantum meruit, and unjust enrichment fail because the plaintiffs cannot show that Phillip relied to his detriment on any promise. Illinois law requires a plaintiff seeking a remedy under these quasi-contract claims to change his position in some way based on the promise, whether that be by providing a benefit to the promisor or by detrimentally relying on the promise made. *See Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 523-24 (2009) (reciting elements of promissory estoppel, one of which is plaintiff's detrimental reliance on defendant's promise); *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979, 931 N.E.2d 810, 825-26 (2010) ("To recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) [the] defendant accepted this service, and (4) no contract existed to prescribe payment for this service." (alteration in original) (citation omitted)); *Premier Elec. Const. Co. v. LaSalle Nat'l Bank*, 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249, 1257 (1984) (explaining that "[u]njust enrichment recovery requires a showing that the defendant has voluntarily accepted a benefit which it would be inequitable for him to retain").

At oral argument, counsel for the plaintiffs agreed that the Participation Plan was a binding contract and that the assurances that the plan would be amended or rewritten to address the self-executing expiration date of February 16, 2014, were the only promises giving rise to these three common law claims. According to the complaint, Phillip relied on the promises contained in the Participation Plan: he took a pay cut; he surrendered benefits to which he was entitled; he remained a faithful and productive employee of Ryerson even when it experienced hardship and worked hard to make Ryerson profitable again. None of this, however, was done in reliance on the subsequent promises to rewrite the plan. The complaint makes no allegation that Phillip took any action, or refrained from any action, in reliance on those promises. Each of these claims must be dismissed.

The plaintiffs also assert a breach-of-fiduciary duty claim. They say that the fiduciary relationship arose when Phillip placed his trust and confidence in Ryerson's promise to rewrite the plan. A fiduciary relationship requires proof of an antecedent relationship whereby one party has placed his trust and confidence in another, giving the latter influence or superiority over the other. *See Ray v. Winter*, 67 Ill. 2d 296, 304, 367 N.E.2d 678, 682 (1977). No allegations in the complaint tend to show that, before the promise to rewrite the plan, such a relationship existed between Phillip and the defendants. The only allegation in the complaint as to the relationship between the parties before the promise to rewrite the plan is that Phillip was the defendants' employee, which is insufficient to establish a fiduciary relationship. *Hess v. Kanoski Associates*, 668 F.3d 446, 455 (7th Cir. 2012).

## CONCLUSION

For the foregoing reasons, the motions to dismiss by Platinum Equity, LLC, Ryerson Holding Corporation, and Ryerson, Inc., are GRANTED. Documents #16 and #18. Sara Wylie and Michael

Wylie's claims for unpaid wages under the Illinois Wage Payment and Collection Act, breach of fiduciary duty, promissory estoppel, quantum meruit, and unjust enrichment are dismissed without prejudice.

IT IS SO ORDERED this 25th day of June, 2018.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE